
FILED
JAN 23 2017
Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| KIRK R. MOLDER,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Defendants. | CV 13-59-GF-DWM-JTJ<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS OF MAGISTRATE JUDGE |

On August 19, 2013, Petitioner Kirk R. Molder filed an application for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Molder was appointed counsel and filed an amended petition on December 8, 2014, presenting claims for relief based on ineffective assistance of counsel. (Doc. 17.) On October 19, 2015, this Court adopted Magistrate Judge John Johnston's Findings and Recommendations denying the State's motion for summary judgment on statute of limitations. (Doc. 43.) Judge Johnston now recommends denying Molder's claims. (Doc. 46.) Molder objects. (Doc. 47.) Molder is entitled to *de novo* review of those specific findings or recommendations to which he objects,

28 U.S.C. § 636(b)(1), while those findings and recommendations not specifically objected to are reviewed for clear error, *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with the "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000). Because the parties are familiar with the factual and procedural background of this case, it will not be restated here.

Molder presents six claims: ineffective assistance of trial counsel for failing (1) to introduce evidence relating to Brittany Highland's 1999 anal-genital examination in Miles City; (2) to introduce Savannah Highland's statement that she had sex with two boys prior to being examined by Dr. Gerrity in 2001; (3) to request a specific unanimity instruction under *State v. Weaver*, 964 P.2d 713 (Mont. 1998); (4) to introduce evidence bearing on the girls' motive to fabricate sexual abuse allegations; (5) to properly address the legal relationship of Molder to Savannah and Britany; and (6) that the cumulative impact of trial counsel's deficiencies prejudiced Molder's defense and requires reversal. Judge Johnston concluded that Molder's ineffective assistance of counsel claims fail under *Strickland v. Washington*, 466 U.S. 668 (1984), and that Molder fails to establish a

single constitutional error. Molder objects as to his first, second, and sixth[1] claims, arguing his first and second claims meet the *Srickland* standard, and that cumulative error prejudiced him. Molder is incorrect.

## LEGAL STANDARD

Counsel is ineffective if (1) his "performance was deficient" and (2) that "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To meet the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* To meet the second, the defendant must show there is a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief may not be granted "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Federal review of

---

[1] Molder's brief identifies his cumulative error claim as "Claim Five." (Doc. 47 at 6.)

a state court's *Strickland* determination is "doubly" deferential, because *Strickland* requires state courts to give deference to choices made by counsel and AEDPA in turn requires the federal court to defer to the determination of the state court. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Under AEDPA, a state court decision is "contrary" to clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from the Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). An "unreasonable application" of clearly established federal law occurs if the state court's application "was objectively unreasonable." *Williams*, 529 U.S. at 409-10, 413.

## ANALYSIS

### A. Molder's Claims

#### 1. Brittany's 1999 Miles City Anal-Genital Examination.

Molder objects to Judge Johnston's finding that the state court did not unreasonably apply *Strickland* in determining that Steve Hudspeth's (Molder's

trial counsel) decision to withhold the medical record was strategic, and that inclusion of the record at trial would not have created a reasonable probability of a different outcome. (Doc. 47 at 3.) The record, a letter from Dr. Patricia Pezzarossi to the Montana Department of Public Health and Human Services, Child and Family Services Division, discussed examinations Dr. Pezzarossi performed on Brittany and Savannah Highland on October 29, 1999. (Doc. 23-52 at 25.) It indicated that Brittany had an intact hymen and no signs of vaginal trauma. It also stated that although Savannah "denied any sexual abuse, she refused to let [Dr. Pezzarossi] examine her vaginal area," and that "she did not want [Dr. Pezzarossi] to make a record of anything or write anything down that she said as she feared her stepfather would find out what she was saying." (Doc. 23-52 at 25.)

Molder argues that Brittany's records were directly relevant to Counts III and V, which charged Molder with having sexual intercourse with Brittany "on or about and between February 10, 1998 and February 10, 1999." (Doc. 47 at 4.) Molder believes the record would have rebutted Brittany's trial testimony that Molder had sex with her "two to four times" a week during this time period. *Id.* This argument, however, overlooks the fact that the examination record also included potentially damaging information regarding Savannah and that

Hudspeth's decision not to introduce the record was a tactical one designed to keep that damaging information out.

Instead of introducing the record, Hudspeth used cross-examination to present the jury with evidence indicating the Pezzarossi examinations did not indicate sexual abuse. (Doc. 49 at 14.) Hudspeth explained this strategic decision in his closing argument, when he argued that the findings of Pezzarossi's exam undercut the prosecution's case that Molder was having sex with Brittany in early 1999 because Brittany and Savannah had been returned to Molder after the exam took place. (Doc. 23-54 at 20.) He described his tactic as "one of the things that [defense attorneys] can do when we represent people charged with crimes in this country. It's called waiting in the weeds . . . but I asked the witnesses questions about [the exam] and it came in, and now they realize that maybe they charged their case wrong." *Id.* Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Here, Hudspeth, after examining Dr. Pezzarossi's letter, made a tactical decision not to introduce it. The state court's determination that his decision did not violate the first prong of *Strickland* is not objectively unreasonable.

Nor was the state court's determination that Molder was not prejudiced by

the omission. As indicated above, the state court noted that Hudspeth was able to elicit testimony from the family's social worker that Child and Family Services policy was not to return children to the custody of an alleged sexual abuse perpetrator if the children showed signs of that abuse, but that Brittany and Savannah had undergone examinations and afterward been returned to Molder's custody. (Doc. 23-23 at 344-47, 361-62, 376-77.) Hudspeth also elicited testimony from Dr. Nora Gerrity that she had learned from the family's social worker that some sexual abuse allegations had been made while the family was living in Forsyth, that physical examinations may have been done at the time, that doctors are under a legal obligation to report suspected cases of sexual abuse, and that the children were returned to Molder's care after these allegations were made. (*Id.* at 409-11, 417-18, 420.) Molder was thus given the exculpatory benefit of the record while being shield from its inculpating elements. The state court's determination was not unreasonable, and Molder's first claim for relief is denied.

### 2. Savannah's Statement She Had Sex with Two Boys

Molder also objects to Judge Johnston's finding that the state court reasonably determined that Molder failed to establish Hudspeth was ineffective by not attempting to introduce Savannah's statement she had sex with two boys. His objection does not succeed.

Montana's rape shield statute bars "evidence concerning the sexual conduct of the victim . . . except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution." Mont. Code. Ann. § 45-5-511. The state court reasonably determined that Hudspeth's conclusion that Savannah's statement did not fall within either exception was not deficient performance as the statute bars the evidence at issue. First, Savannah's statement did not implicate Molder in prior sexual conduct with her. Second, Savannah's statement would not have been offered "to show the origin of semen, pregnancy, or disease . . . at issue in the prosecution." *Id.* The statement also did not fall within the limited exception recognized by the Montana Supreme Court for evidence "narrowed to the issue of the complaining witness' veracity" and relating to the victim's subsequently disproven prior assertion of sexual abuse. *State v. Anderson*, 686 P.2d 193, 199-200 (Mont. 1984).[2] Hudspeth did not perform deficiently by not attempting to introduce Savannah's statement in light of the plain meaning of Montana's rape shield statute.

---

[2] *State v. Bauer*, 39 P.3d 689, 696 (Mont. 2002) does not help Molder either. There, the Montana Supreme Court noted that the Compiler's Comments to § 45-5-511 describe the second exception as "evidence that refutes an inference derived from physical evidence of the crime offered by the victim." That description, however, does not control over the plain language of the statute.

Further, Molder was not prejudiced by the omissions of Savannah's statement. As both the state court and Judge Johnston have noted, there was reason to question the veracity of Savannah's statement, as it was made during the time Savannah continued to deny sexual contact with Molder. The probative value of Savannah's statement is also questionable, given that the injury to Savannah's hymen would have resulted from penetration and it is unclear what "having sex" meant in the context of the interview.[3] Savannah's statement was also consistent with Dr. Gerrity's testimony that both Brittany and Savannah had suffered penetrating trauma to the hymen, consistent with sexual abuse, (Doc. 23-22 at 317-19; Doc. 23-23 at 388), and that she could not determine when or how often the injury happened and who was responsible for the abuse, (Doc. 23-22 at 321, 323; Doc. 23-23 at 347, 378, 384). Finally, the jury was presented with ample evidence, including testimony from Savannah, Brittany, and Shauna, and the physical findings by both Dr. Gerrity and Dr. Maynard, that Molder had sexual contact with the girls. This record demonstrates there was no reasonable probability that the outcome of Molder's trial would have been different had Savannah's statement been introduced.

---

[3] The trial court noted Molder had not produced a transcript of the interview and so it could not address the context of Savannah's statement.

Molder also argues his Fourteenth Amendment due process and Sixth Amendment confrontation rights were violated by the application of the rape shield statute. These claims are procedurally defaulted because they were not presented to the state courts, and Molder has not presented cause and prejudice to excuse the default, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), and, as discussed above, he has not established a substantial claim of ineffective assistance of counsel such that default should be excused, *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 1320 (2012); *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 1918 (2013). Molder's second claim for relief is denied.

### 3. Specific Unanimity Instruction

Molder does not object to Judge Johnston's finding as reasonable the state court's decision that Hudspeth's failure to request a specific unanimity instruction and appellate counsel's decision not to raise a corresponding claim on direct appeal did not constitute deficient performance.

The Montana Supreme Court has held that Article II, § 26 of the Montana Constitution requires a trial court to give a specific unanimity instruction where the defendant is charged with "a series of unrelated allegations of sexual misconduct taking place over a period of years." *Weaver*, 964 P.2d at 721. In

contrast, where the evidence shows the defendant's "persistent illegal acts were so frequently perpetuated and so closely connected as to be properly viewed as a single, continuous, running offense," a specific unanimity instruction is not required. *State v. Harris*, 36 P.3d 372, 375-76 (Mont. 2001).

Here, the charged conduct is similar to that in *Harris*, and unlike that in *Weaver*. The course of conduct that occurred, and the close connection between the criminal acts against each girl, demonstrate that Molder's acts formed a continuous, running offense. As discussed at length by Judge Johnston, the jury was presented with ample evidence of sexual contact between Molder and the girls, including evidence specific to each count. (Doc. 46 at 33-37.) Neither Hudspeth's failure to request a unanimity instruction nor appellate counsel's failure to raise the issue on appeal constitute deficient performance. *United States v. Aguon*, 851 F.2d 1158, 1172 (9th Cir. 1988) (en banc) (counsel's failure to object not deficient where the claim lacked merit) (overruled on other grounds *Evans v. United States*, 504 U.S. 255 (1992). The ample and specific evidence of sexual conduct further shows that Molder was not prejudiced by the lack of a specific unanimity instruction as there is no reasonable probability that such an instruction would have altered the outcome of the trial.

To the extent Molder asks to evaluate Montana law regarding specific

unanimity instructions, a federal habeas court may not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Finally, Molder's attempt to advance a federal due process claim is procedurally defaulted because he did not raise it in state court; even if the due process claim were proper, Molder has not shown that lack of a specific unanimity instruction so infected the entire trial that the resulting conviction violated due process. *Estelle*, 502 U.S. at 71-72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Naughten*, 414 U.S. 141 (1973). Molder's third claim is denied.

### 4. Evidence Related to the Girl's Motive to Fabricate Allegations

Molder does not object to Judge Johnston's finding that the state court reasonably determined Hudspeth did not provide deficient performance when he chose not to attempt to introduce evidence of a supposed shared motive between Savannah, Brittany, and Shauna for fabricating their allegations against Molder. The evidence at issue was a statement in Kirk Molder, Jr.'s *guardian ad litem*'s report providing that Kirk's therapist had reported that Kirk told her that he had sex with Shauna at the direction of his sisters, and that his sisters were lesbians. (Doc. 23-52 at 90.) Molder contends the statement demonstrates a motive for the girls' to fabricate their abuse allegations: to draw attention from their own misbehavior.

The state court noted this hearsay-within-hearsay statement was inherently unreliable and was uncorroborated. (Doc. 23-54 at 28.) Additionally, no evidence showed the girls were even aware of Kirk's disclosure to his therapist. The state court also noted the rape shield statute would bar the statement even were it otherwise admissible. *Id.* Hudspeth's determination that Kirk's statement was inadmissible was reasonable in light of these circumstances, as was his decision not to use the statement to impeach the girls.[4] The evidence was suspect and its probative value limited. And in light of the weight of evidence against Molder, there was no reasonable probability that introduction of the statement would have altered the outcome of his trial. Molder's fourth claim is denied.

### 5. The Legal Relationship Between Molder, Savannah, and Brittnay

Judge Johnston rejected Molders claim that Hudspeth was ineffective because he "conceded" one of the elements of the four incest charges, namely that Molder was stepfather to Brittany and Savannah. (Doc. 46 at 45.) Molder does not object to Judge Johnston's finding. In his petition, Molder argues that

---

[4]Molder's reliance on *Olden v. Kentucky*, 488 U.S. 227 (1988) is misplaced. In *Olden*, the victim was undisputably in a relationship with another man who saw her exit Olden's vehicle after the rape occurred, allowing a reasonable juror to infer the victim had motive to lie about the consensual nature of her sexual encounter with Olden. Here, no evidence shows the victims knew of Kirk Jr.'s statements, and the inference (that the girls invented the allegations to hide their own sexual encounter) is beyond what a reasonable juror would make.

Hudspeth should have introduced Judge McKittrick's order from the Youth in Need of Care proceeding to undermine the incest charges, and that his failure to do so constituted ineffective assistance. (Doc. 17 at 40.) However, as Judge Johnston observed, Hudspeth worked assiduously, and strategically, to challenge the legal relationship element of incest. (Doc. 46 at 45.) Notably, Hudspeth elicited testimony from the social worker involved in the Youth in Need of Care Proceedings that Molder had been determined not to be the legal step-father of Brittany or Savannah. (Doc. 23-23 at 408.) Additionally, Hudspeth's decision to agree to the stipulation concerning Molder's involvement in the Youth in Need of Care proceeding was strategic, designed to prevent the recall of a witness, Rachel Cotu, who the state proposed would discuss Judge McKittrick's initial finding that Molder and Shannon Berg were common-law married. (Doc. 23-24 at 686.)

The state court reasonably found that Hudspeth's strategic decisions regarding the stipulation and Judge McKittrick's order were not deficient. Hudspeth articulated his strategy at the pre-trial conference and the record demonstrates he made tactical decisions to carry that strategy out. (Doc. 23-22 at 26, 40-41.) Molder has not shown that the introduction of Judge McKittrick's ruling would have created a reasonable probability that the outcome of his trial would have been different. Importantly, Hudspeth did not concede an element of

incest, as Molder alleges. Instead, he chose a reasonable trial strategy which included repeatedly attacking the family relation element of incest. Molder's fifth claim is denied.

### 6. Cumulative Error

Molder argues cumulative error violated his constitutional rights. However, as Judge Johnston found, Molder is unable to establish a single constitutional error, and therefore no cumulative error exists. *Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999). Molder does not object to this finding, and his claim of cumulative error is denied.

### B. Certificate of Appealability

A certificate of appealability should issue for those claims where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Molder has not made a substantial showing that he was deprived of a constitutional. *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). A certificate of appealability is not appropriate.

### C. Molder's *Pro Se* Objections

After Molder's attorney filed objections to Judge Johnston's Findings and Recommendations, Molder filed his own *pro se* objections on September 9, 2016. (Doc. 48.) "It is settled law that a defendant has the right to represent himself in a

criminal trial and that he has the right to the assistance of counsel." *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978). However, a defendant "does not have an absolute right to both self-representation *and* the assistance of counsel." *United States v. Bergman*, 813 F.2d 1027, 1030 (9th Cir. 1987) (emphasis in original). Because Molder has not been granted permission for hybrid representation, *Berman*, 813 F.3d at 1030, his *pro se* objections will not be considered here.

## CONCLUSION

Molder's claims alleging ineffective assistance of counsel fail to show ineffective assistance of either appellate or trial counsel. *Strickland*, 466 U.S. at 687. Accordingly,

IT IS ORDERED that the Findings and Recommendations of Judge Johnston (Doc. 46) are ADOPTED in full.

IT IS FURTHER ORDERED that the petitioner's motion to supplement (Doc. 50) is DENIED. Molder's petition (Doc. 17) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter, by separate document, a judgment in favor of the respondents and against the petitioner.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

DATED this 23rd day of January, 2017.

                                                                    Donald W. Molloy, District Judge
                                                                    United States District Court